**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LATONYA WRIGHT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DERMARITE INDUSTIES, LLC.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff LATONYA WRIGHT ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant DERMARITE INDUSTRIES, LLC. (hereinafter "DermaRite" or "Defendant").

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of DermaRite Industries LLC (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's skin care, wound care, nutritional, and infection control products throughout the United States (hereinafter the "Products") which contained *Burkholderia cepecia complex* ("BCC").

2. On August 8, 2025, Defendant announced in a press release[1] that they were conducting a nationwide product recall due to identifying the presence of BCC, including:

[11] https://dermarite.com/voluntary-recall/ (last access September 26, 2025)

| **Product Description** |
|---|
| DermaKleen 1000ml. bag-n-box, 10/case |
| DermaKleen 800ml. bag-n-box, 12/case |
| DermaSarra 7.5oz, 24/case |
| KleenFoam 1000ml., 6/case |
| PeriGiene 7.5oz., 48/case |

3. On August 27, 2025, the recall was then further expanded to include additional products that contained BCC (collectively the "Recall").[2] The August 27, 2025 Product recall included:

| **Product Description** |
|---|
| 3-N-1 Cleansing Foam 7.5 oz. , 12/case |
| 4-N-1 Wash Cream 4oz ,24/case |
| Clean-N-Free Bottle 7.5oz., 48/case |
| DermaCerin (lg. jar) 16oz., 24/case |
| DermaCerin tubes 3.75oz., 24/case |
| DermaDaily lotion 4oz., 96/case |
| DermaDaily lotion 7.5oz., 48/case |
| DermaDaily lotion 1000 ml. bag-n-box, 10/case 00122BB 08/2027 DermaFungal 3.75oz. tube, 24/case |

[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/dermarite-industries-expands-voluntary-nationwide-recall-due-potential-burkholderia-cepacia (last access September 26, 2025)

| |
|---|
| DermaFungal 5g packets, 144/box |
| DermaKleen 1000ml. bag-n-box, 10/case 0092BB 08/2027 DermaKleen 7.5oz., 24/case |
| DermaKleen 800ml. bag-n-box, 12/case 0090BB 08/2027 DermaKlenz 8oz., 24/case |
| DermaKlenz Spray 4oz., 12/case |
| DermaMed Ointment 3.75oz. tube, 24/case |
| DermaRain 16oz., 12/case |
| DermaRain 7.5oz., 48/case |
| DermaRain 800ml. bag-n-box, 12/case 0049BB 08/2027 DermaSarra 7.5oz, 24/case |
| DermaSyn 3oz. tube, 24/case |
| DermaVantage 2oz. tube, 72/case |
| DermaVantage lotion 7.5oz, 48/case |
| DermaVantage lotion 1000ml. bag-n-box, 10/case 00149BB 08/202 DermaVera 800ml. bag-n-box, 12/case 0013BB 08/2027 DermaVera 1000ml. bag-n-box, 10/case 0014BB 08/2027 DermaVera 4oz, 96/case |
| DermaVera 7.5oz. bottle, 48/case |
| DermaVera Gallon, 4/case |
| GelRite 1000ml, 10/case 00110BB 08/2027 GelRite 16oz., 12/case |
| GelRite 4oz., 24/case |
| GelRite 800ml., 12/case 00100BB 08/2027 Hand-E-Foam 1000ml., 6/case 00109F 08/2027 Hand-E-Foam 8oz., 12/case |
| KleenFoam 1000ml., 6/case 0093F 08/2027 Lantiseptic Daily Care Skin Therapy 14oz Jar Case/12 LS0710 08/2027 Lantiseptic Dry Skin Therapy 4oz Tube Case/12 LS0410 08/2027 Lantiseptic Dry Skin Therapy 5g Packets 144/Box LS0404 08/2027 Lantiseptic Skin Protectant 4.5oz Jar Case/24 LS0310 08/2027 Lantiseptic Skin Protectant 12oz Jar Case/12 LS0311 08/2027 Lantiseptic Skin Protectant 14.2g Packets Case/144 LS0305 08/2027 Lantiseptic Skin Protectant 4oz Tube Case/12 LS0308 08/2027 Lantiseptic Skin Protectant 5g Packets Case/288 LS0304 08/2027 LubriSilk lotion,16oz 12/case 00166P 08/2027 McKesson Skin Protectant 4oz Tube Case/24 LS4615 08/2027 McKesson Skin Protectant 5g Packets Case/288 LS4613 08/2027 PeriFresh (Perineal Cleanser) 7.5oz., 48/case |
| PeriFresh (Perineal Cleanser) gallons w/fragrance, 4/case |

| |
|---|
| PeriGiene 7.5oz., 48/case |
| PeriGuard 3.5oz tube, 24/case |
| PeriGuard 7oz tubes, 48/case |
| PeriGuard ointment packets 5g, 144/box |
| Renew 8oz shampoo/body wash, 24/case |
| Renew Dimethicone Skin Protectant packets 5g, 144/box |
| Renew Full-Body foaming cleanser 8oz, 12/case |
| Renew PeriProtect 4oz tube 12/case |
| Renew Skin Protectant w/ dimethicone, 12/case |
| Renew Skin Repair 4oz tube, 12/case |
| Renew Skin Repair 5g packets, 144/box |
| Renew Skin Repair 800mL, 12/case 00407BB 08/2027 San-E-Foam 1000ml., 6/case 00107F 08/2027 TotalBath 1000ml. bag-n-box, 10/case 0025BB 08/2027 TotalBath 7.5oz., 48/case |
| TotalBath 800ml. bag-n-box, 12/case 0020BB 08/2027 TotalBath gallon, 4/case |
| TotalFoam 1000ml., 6/case 0026F 08/2027 UltraSure Deodorant Pump Spray 4 oz., 24/case |
| Whirlbath Balance gallons,4/case |

4. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products may increase the risk of serious and life-threatening infections and sepsis due to the presence of a microbial contamination identified as BCC.

5. BCC is recognized to be dangerous bacteria that can cause infections. BCC can cause serious respiratory infections, especially in patients with cystic fibrosis or other chronic lung diseases.[3]

6. In their August 8, 2025 press release, Defendant acknowledged the risk associated with BCC contamination. Specifically, Defendant recognized that individuals who are immunosuppressed are especially vulnerable to infection when utilizing products contaminated with BCC, for if the bacteria were to spread into the bloodstream, it could cause life-threatening sepsis. Even those who are not immunosuppressed run the risk of infection when using a product containing BCC, such as that sold by Defendant.

7. Defendant specifically lists the ingredients in the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, BCC.

8. An example of Defendant's lack of disclosure on the Products is depicted below[4]:




[3] https://www.cdc.gov/b-cepacia/about/index.html (last accessed September 26, 2025)
[4] DermaRite Industries Issues Voluntary Nationwide Recall of DermaKleen, Dermasarra, Kleenfoam, and Perigiene Products Due to Burkholderia cepacia Contamination | FDA (last access September 26, 2025)

9. Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including BCC.

10. Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the skin care, wound care, nutritional, and infection control products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

11. Unfortunately for consumers, such as Plaintiff, the Products they purchased contained this harmful strain of bacteria.

12. Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products contain BCC. The presence of BCC is material to reasonable consumers.

13. The presence and amounts of BCC in the Products was and is information solely within the possession of Defendant, and consumers could only obtain such information by conducting their own independent testing by sending the Products off to a laboratory for extensive testing. This omission leads a reasonable consumer to believe they are not purchasing a product that could be potentially harmful to their health, when in reality, they are purchasing a product contaminated with BCC.

14. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product–the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for use on the skin and does not contain any harmful bacteria. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, BCC.

15. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, BCC, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention BCC anywhere on the Products' packaging or labeling.

16. Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

17. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a Product contaminated with or at risk of being contaminated a known bacteria that is harmful to consumers' health.

18. As set forth below, skin care, wound care, nutritional, or infection control products containing BCC or at risk of containing BCC, such as Defendant's Products, are in no way safe for use and are entirely worthless.

19. Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

20. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendant also breached and continues to breach its warranties regarding the Products.

21. Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendant DermaRite Industries LLC is a citizen of New Jersey; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

23. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

24. Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

**Plaintiff LaTonya Wright**

25. Plaintiff LaTonya Wright is a citizen and resident of Kings County, New York.

26. During the relevant period, Plaintiff Wright purchased the DermaKleen Health Care Antiseptic Lotion Soap from CVS located in Queens County, for approximately $12.00.

27. Absent Defendant's false, misleading, and deceptive representations and omissions concerning the contents of the Products, Plaintiff would not have purchased the Products. Plaintiff either would not have purchased the Products, would have purchased fewer of them, or would have paid a lower price had she been aware of the true facts. The Products Plaintiff did purchase were valueless because they contained the known harmful substance BCC. Alternatively, Plaintiff paid

a price premium as a direct result of Defendant's false, misleading, and deceptive representations and omissions.

28. As a result, Plaintiff suffered an injury in fact and lost money due to Defendant's unlawful conduct.

**Defendant DermaRite**

29. Defendant, DermaRite Industries, LLC is a foreign limited liability company with a principle place of business in North Bergen, New Jersey.

30. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## FACTUAL BACKGROUND

31. Defendant manufactures, markets, advertises, and sells skin care, wound care, nutritional, or infection control products.[5]

32. Consumers have become increasingly concerned about the effects of ingredients in products that they use on their skin. Companies, such as Defendant, have capitalized on consumers' desire for skin care, wound care, nutritional, and infection control products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

33. Prior to the Recall, when Plaintiff and consumers purchased the Products, there were no public disclosures regarding the presence or amounts of BCC in the Products.

34. Consumers lack the scientific knowledge and meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as BCC, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and

[5] https://dermarite.com/ (last accessed September 26, 2025)

honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

35. The Recalled Products' packaging and marketing did not disclose that it contained or was at risk of containing BCC. Thus, consumers reasonably believed that their purchases did not contain the harmful bacteria.

36. BCC is a group of bacteria that can cause infections. BCC can cause serious respiratory infections, especially in patients with cystic fibrosis or other chronic lung disease common bacterial disease that affects the intestinal tract. BCC is commonly found in soil and water and may be contracted by exposure from water, soil, or watery environments, contact with contaminated surfaces, contact with contaminated equipment; and person-to-person transmission.[6]

37. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing skin care, wound care, nutritional, or infection control products for more than 25 years, including producing and manufacturing the Products.[7]

38. Given Defendant's experience in the industry, Defendant has knowledge of the manufacturing process as well as the ingredients and raw materials utilized in their products. Thus, Defendant additionally has knowledge of risks associated with such process, including the risk of BCC contamination.

39. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

40. Defendant's omission regarding BCC prevents consumers from obtaining full and complete information regarding the total amount of BCC they are being exposed to in a single day

---

[6] https://www.cdc.gov/b-cepacia/about/index.html (last accessed September 26, 2025)
[7] https://dermarite.com/about-us/ (last accessed September 26, 2025)

and over the course of time. This inhibits consumers' decision-making regarding their cumulative exposure to BCC.

41. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing BCC are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

42. By and when omitting that the Products include BCC on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with a harmful group of bacteria.

43. Defendant's deceptive omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

44. Defendant's false, misleading, and deceptive omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

45. In making the false, misleading, and deceptive omissions described herein, Defendant knew and intended that consumers would pay a premium for Products they marketed without the likelihood of BCC contamination over comparable products not so marketed.

46. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

47. Had Defendant not made the false, misleading, and deceptive omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

## CLASS ALLEGATIONS

48. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

49. The proposed Class is defined as follows:

> **Nationwide Class:** All persons within the United States who purchased Defendant's affected Products.
>
> **New York subclass:** All persons within the state of New York who purchased Defendant's affected Products.

50. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

51. *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

52. *Commonality*: Questions of law or fact common to the Class include, without limitation:

a. Whether the Products in question were defective;

b. Whether the defective nature of the Products would be considered material;

c. Whether the defective nature of the Products constitute an unreasonable safety risk;

d. Whether Defendant knew or should have known about the defective nature of the Products;

e. Whether Defendant had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

f. Whether the defective nature of the products has decreased the value of the Products;

g. Whether Defendant's conduct constitutes an unlawful breach of the implied warranty of merchantability;

h. Whether Defendant's conduct constitutes an unlawful breach of express warranties;

i. Whether Defendant's fraudulently omitted material information in its interactions with consumers;

j. Whether Defendant was unjustly enriched;

k. Whether Plaintiff and Class members are entitled to damages and/or other monetary relief.

53. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

54. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

55. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

56. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

57. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

58. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

59. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

60. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New York GBL § 349**
**(On behalf of Plaintiff and the New York Subclass members)**

61. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

62. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

63. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

64. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

65. Defendant's improper consumer-oriented conduct—including failing to disclose that its Products contained BCC—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

66. Plaintiff and the New York Subclass Members have been injured because they purchased Products that were mislabeled. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

67. Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

68. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

69. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of New York GBL § 350**
**(On behalf of Plaintiff and the New York Subclass members)**

70. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

72. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the

> advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

73. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products since it omits disclosure of the potential health risks associated with BCC present in the Products.

74. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

75. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

76. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

77. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350 *et seq*.

78. Defendant made the material omissions described in this Complaint in its advertising and on the Products' packaging and labeling.

79. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

80. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory

damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation**
**(on behalf of Plaintiff and the Class Members)**

81. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

82. Defendant represented that the Products are safe for their principal uses as facial cleansers, moisturizers, disinfectants for wound care, and other skincare purposes. However, Defendant failed to disclose that the Products are not safe and use of the Products could cause infection or other health risks from exposure to BCC.

83. At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

84. Defendant had a duty to make truthful representations about the Products because it was reasonably foreseeable that consumers would reasonably rely on Defendant's material representations about the Products.

85. Defendant negligently misrepresented material facts about the safety of the Products.

86. The negligent misrepresentations made by Defendant, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class to purchase the Products.

87. The negligent actions of Defendant caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

## FOURTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**
**(on behalf of Plaintiff and all Class Members)**

88. Plaintiff repeats and re-allege the allegations above as if set forth herein.

89. The sale of Defendant's Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[8]

90. Defendant, as the manufacturer, marketer, and distributor, impliedly warranted that the Products are merchantable as skin care, wound care, nutritional and infection control products.

91. Plaintiff and Class Members purchased the Products relying on Defendant's skill and judgment in properly manufacturing, packaging and labeling the Products.

92. Defendant breached the warranty implied in the contract for the sale of the Products because they could not "pass without objection in the trade under the contract description," the Products were not "of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label if any." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

---

[8] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

93. Defendant knowingly breached the implied warranties by including BCC in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

94. Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include BCC in the ingredients list.

95. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class members have been injured and sustained damages.

96. Defendant has actual notice of the warranty claims alleged herein due to its recall of the Products.

## FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(on behalf of Plaintiff and all Class Members)**

97. All preceding paragraphs are incorporated by reference as though fully set forth herein.

98. Defendant represented to Plaintiff and Class members that their Products were reliable, merchantable, and in good repair when, in fact, the Products were not.

99. The defect caused the Products to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

100. Defendant knew or should have known that their Products could not conform to their representations because of the defect.

101. Defendant mispresented, concealed, and omitted material information concerning the defect.

102. The defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

103. Defendant mispresented, concealed, and omitted material information concerning the defect in order to induce Plaintiff and Class members to purchase their Products at a substantially higher price than what they would otherwise have paid.

104. Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Products.

105. Plaintiff and Class members would not have purchased the Products if they knew of the defect, or they would have paid substantially less.

106. Plaintiff and Class members conferred substantial benefits on Defendant by purchasing defective Products at a premium without receiving a product that conformed to Defendant's representations.

107. Defendant knowingly and willingly accepted and enjoyed these benefits.

108. Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

109. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

**SIXTH CAUSE OF ACTION**
**Fraudulent Concealment**
**(on behalf of Plaintiff and all Class Members)**

110. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

111. Defendant concealed and failed to disclose on the Products' packaging and labeling the material fact the Products contained BCC, and that the Products were not safe or healthy for use.

112. Defendant knew or should have known that BCC is dangerous, and concealing this known fact is detrimental to the consumer.

113. Defendant had a duty to disclose that the Products were contaminated with BCC, but, Defendant did not make this disclosure.

114. Plaintiff and the Class all paid a premium for the Products based upon the way they were represented by Defendant as safe and healthy for use on the skin, which did not include disclosure of the presence of BCC. Products that are contaminated with BCC are worth substantially less to a reasonable consumer.

115. Defendant had superior knowledge or means of knowledge available to it and knew that Plaintiff and Class Members would rely upon the representations and omissions of Defendant regarding the quality and ingredients of its Products. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains BCC, especially at the point of sale.

116. Defendant's concealment was material and intentional because a reasonable consumer would be concerned with what is in the products that they are applying to their skin and, in some cases, applying to open cuts and wounds. Consumers reasonably rely on the ingredients listed, as well as any warnings (or the lack thereof) on the products they buy.

117. Defendant knew that if it had not omitted that the Products contained BCC, then Plaintiff and the Class would not have agreed to pay a premium price for the Products, or would not have purchased the Products at all.

118. Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and applying to their skin and, in some cases, open cuts and wounds.

119. Defendant fraudulently concealed that the Products contained BCC.

120. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action.

b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendant's unlawful conduct.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of interest as provided by law, including pre-judgment and post-judgment interest.

f. Such other and further relief as this Court may deem just, equitable, or proper.

Dated: October 24, 2025

Respectfully submitted,

*_/s/ Brett R. Cohen____________*
Brett R. Cohen, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
bcohen@leedsbrownlaw.com

*Counsel for Plaintiff and Proposed Class*